IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD E. CHANG, JR.,                          *

    Plaintiff,                                  *

        v.                                     *          Civil Action No. DKC-25-1330

WARDEN WILLIAM BAILEY,                          *
CAPT. FOXWELL,
LT. GATTIS,                                     *
COII PARKER, and
C/M MS. BROWN,                                  *

    Defendants.                                 *
                              ***

**MEMORANDUM OPINION**

Plaintiff Richard Chang filed this civil suit against Warden William Bailey, Captain Lucas Foxwell, Lieutenant Patricia Gattis, COII Melissa Parker, and Danielle Brown alleging that he was fired retaliatorily from his job assignment and blocked from pursuing other job opportunities while he was incarcerated at Eastern Correctional Institution ("ECI").[1]  ECF No. 6.  Now pending are Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), Defendants' Motion to Strike (ECF No. 25),[2] and Mr. Chang's Motion to Appoint Counsel (ECF No. 27).  Mr. Chang opposes Defendants' dispositive motion.  ECF No. 18.  No hearing is

---

[1]    The Clerk will be directed to amend the docket to reflect Defendants' full names and titles.

[2]    Defendants ask the court to strike the correspondence submitted by Mr. Chang on November 17, 2025 (ECF No. 24), asserting that it is an unauthorized surreply.  ECF No. 25.  No party is entitled to file a surreply unless otherwise ordered by the court.  *See* Local Rule 105.2(a) (D. Md. 2025).  A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply.  *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). Mr. Chang did not seek permission from the court to file a surreply nor were any new matters raised in Defendants' reply.  (ECF No. 22).  Therefore, to the extent that Mr. Chang submitted this correspondence as a surreply, Defendants' motion will be granted, and the correspondence stricken.

necessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, Defendants' Motion will be granted.

BACKGROUND

A.    Amended Complaint Allegations

Mr. Chang alleges that on the morning of March 4, 2025, he was working at ECI as an Inmate Observation Aide ("IOA") when another inmate, Mason, approached him and "was clearly trying to get a rise out of [Mr. Chang]."  ECF No. 6 at 5.  Shortly thereafter, Mr. Chang's shift ended.  He approached COII Parker to report the interaction that he had with the other inmate and requested to return to his original shift to avoid the hostility.  *Id.* at 6.  COII Parker stated that it was Captain Foxwell who had the ability to change his schedule.  *Id.*  Mr. Chang returned to his housing unit and filed an informal complaint against COII Parker for retaliation and discrimination.  *Id.*  Later that afternoon, Mr. Chang was called to the classification area where he spoke with Assistant Warden Brittingham about the issue.  She told him not to report for work the next day but assured him he would not be fired while she investigated the situation.  *Id.*

On March 6, 2025, Mr. Chang attended a meeting for all IOA workers together with COII Parker, Captain Foxwell, Lt. Gattis, and Case Manager Brown. ECF No. 6 at 7.  Mr. Chang alleges that Captain Foxwell told the group, "like at other meeting COII Parker and I/I Mason were not going anywhere" and that "he would fire every I.O.A. worker before he would move either of them."  *Id.*  Mr. Chang was directed to stay after the meeting, and he went to an office to meet with Captain Foxwell, COII Parker, and Case Manager Brown where he was required to explain his issue despite COII Parker's presence.  *Id.*  Captain Foxwell then terminated Mr. Chang from his job assignment and advised him not to contact Assistant Warden Brittingham, because it would not change the decision.  *Id.*  Mr. Chang contends that his termination was in retaliation for filing the

2

informal complaint against COII Parker.  *Id.* at 8.  According to Mr. Chang, the retaliation is ongoing because he has since been rejected from four different jobs by Captain Foxwell, Lt. Gattis, and COII Parker.  *Id.*  These included positions in the lock up unit, maintenance department, education department, and housing maintenance.  *Id.*

Mr. Chang seeks his back pay and damages for violation of his Eighth and Fourteenth Amendment rights.  ECF No. 6 at 9.

B.      Job Assignment History

According to Defendants' motion, in November 2023, Mr. Chang was assigned to be an IOA, which requires him to constantly monitor inmates at risk of suicide.  *See* ECF No. 16-2 at 6-8.  COII Parker avers in her declaration that on March 6, 2025, based on her own observations and other officers' reports, it appeared that several IOAs, including Mr. Chang, "were involved in misconduct, poor job performance, and behavior that was not sanctioned for IOAs."  ECF No. 16-3 at ¶ 2, pg. 3.  COII Parker recommended that these IOAs be moved from the night shift to the day shift so they could be more closely monitored.  *Id.* at ¶ 2.  Mr. Chang expressed his dissatisfaction with the change, stating that working the day shift prevented him from doing other jobs on his tier, even though he was only being paid for his IOA work.  *Id.* Therefore, COII Parker recommended that he be reclassified to a different job.  *Id.*  After her recommendation was approved, COII Parker was not involved in any further job assignment decisions.  *Id.* at ¶ 3.

Mr. Chang first sought relief through an Informal Complaint against COII Parker.  ECF No. 16-2 at 13.  Case management decisions are governed by the Division of Correction Case Management Manual, and job assignments and reclassifications fall specifically under DOC.100.0002 § 5.  ECF No. 16-4 at 5-14.  Therefore, when Case Manager Brown received the reclassification recommendation from COII Parker, she processed it through a Case Management

Assignment Sheet.  ECF No. 16-2 at 11-12; *see* ECF No. 16-4 at 5 (DOC.100.0002 § 5.A(1)(a).

The Sheet was then forwarded to a Case Management Supervisor for review and then to Assistant

Warden Brittingham, who approved the reclassification.  ECF No. 16-2 at 12; *see* ECF No. 16-4

at 5-6 (DOC.100.0002 § 5.A, 5.D-E(1)).  Mr. Chang was simultaneously added to the "Job Bank"

for a sanitation position.  ECF No. 16-2 at 12.  The Job Bank is a chronological list of inmates

eligible for job or program assignments.  Positions are assigned first to those inmates who have

been waiting the longest.  ECF No. 16-4 at 4 (DOC.100.0002 § 2(34)), 12 (§ 5.I).

C.      Administrative Remedy Procedure

        Mr. Chang also filed a Request for Administrative Remedy (known as an "ARP")

contending that his termination from his IOA position was discriminatory and retaliatory.  ECF

No. 16-2 at 14.  The ARP was dismissed pursuant to Md. Code Regs. 12.02.28.04.B(1), because

the ARP is not the avenue through which inmates can challenge case management decisions.  *Id.*

Mr. Chang appealed the dismissal to the Commissioner of Correction, but it was dismissed on the

same basis.  *Id.* at 15.  IIGO Director F. Todd Taylor, Jr. attests that Mr. Chang did not file any

grievances with the IIGO before May 22, 2025, the date Mr. Chang filed his Amended Complaint.

ECF No. 16-5 at ¶ 2.

STANDARD OF REVIEW

        In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the

facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Lab'ys, Inc. v.

Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.

1997).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain

4

statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants' dispositive motion is also filed in the alternative as a motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to … the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"

6

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

DISCUSSION

Defendants seek dismissal of the Amended Complaint or that summary judgment be granted in their favor because 1) they are immune from suit in their official capacities; 2) Mr. Chang fails to state a claim against Warden Bailey; 3) Mr. Chang failed to exhaust his administrative remedies; 4) Mr. Chang's job reclassification does not state a claim; 5) Mr. Chang fails to state a claim for retaliation; 6) there is no *respondeat superior* liability under 42 U.S.C. § 1983; and 7) Defendants are entitled to qualified immunity.  ECF No. 16-1.  Mr. Chang responds that he did exhaust his administrative remedies and generally opposes Defendants' motions.  ECF No. 18 at 1.  Other than conclusory assertions, he produces no evidence.

A.      Eleventh Amendment Immunity

Mr. Chang's Amended Complaint does not state the capacity in which he sues Defendants, but to the extent they are sued in their official capacities, those claims must be dismissed.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471–

72 (1985). Accordingly, any claims against Defendants in their official capacities must be dismissed.

B.     Warden William Bailey

The court must also dismiss the Amended Complaint against Warden Bailey in his individual capacity. Other than naming him in the caption of the pleading and the list of defendants, Mr. Chang does not make any allegations against Warden Bailey. Nor does he plead any facts showing that Warden Bailey personally participated in any of the alleged wrongdoing. As liability under § 1983 attaches only upon personal participation in a constitutional violation, *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001), Warden Bailey must be dismissed from this suit.

C.     Exhaustion of Administrative Remedies

The remaining Defendants argue that Mr. Chang's claims regarding his retaliatory job reclassification should be dismissed because he did not exhaust the available administrative remedies. ECF No. 16-1 at 11. Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not a jurisdictional prerequisite, a plaintiff must nonetheless exhaust before this court hears the claim. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Because the court may not consider an unexhausted claim, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v.*

*French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' … normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of [their] own, was prevented from availing [themself] of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *Kaba*, 458 F.3d at 684.

In Maryland prisons, for complaints about prison conditions, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See generally* Md. Code Ann., Corr. Servs. §§ 10–201 to 10–210 (LexisNexis 2017); Md. Code Regs. 12.02.28.02(B)(1) (2022) (defining the ARP). First, a prisoner must file a grievance, known as an ARP, with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. 12.02.28.09(B), 12.02.28.05(D). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. 12.02.28.14. If the appeal is denied, the prisoner must appeal within 30 days to the Incarcerated Individual Grievance Office ("IIGO"). *See* Md. Code Ann., Corr. Servs. § 10–206; Md. Code Regs. 12.02.28.18, 12.07.01.05. Inmates may seek judicial review of the IIGO's final determinations in a Maryland circuit court. Md. Code Ann., Corr. Servs. § 10–210.

Separately, Maryland prisoners complaining about case management matters such as housing, transfers, and job assignments may initiate their grievance directly with the IIGO, bypassing review by their Warden and the Commissioner.  Md. Code Regs. 12.02.24.02.E and G. Issues such as these cannot be resolved through the ARP.  Md. Code Regs. 12.02.28.04.B(1).

Because Mr. Chang's complaint concerns his job assignment as an IOA, it falls under the category of a case management decision.  To challenge that decision and raise the alleged discrimination and retaliation as the basis for his termination, Mr. Chang was required to file a grievance with the IIGO directly.  The record before the court establishes that he did not do so before filing this action.  Nevertheless, Defendants have not met their burden to show that the correct administrative remedy process was available to Mr. Chang.  Nothing in the record establishes that Mr. Chang was ever made aware of the separate requirements for case management appeals, as opposed to the ARP procedure he attempted to utilize for his complaint.  *See Ross*, 578 U.S. at 643-44 (holding that if a remedy is essentially "unknowable" it is so opaque as being incapable of use and is unavailable).  The *Ross* Court specified that "[g]rievance procedures are unavailable ... if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Id.* at 644 n.3 (citing *Davis v. Hernandez*, 798 F.3d 295 (5th Cir. 2015)  "The responses to his complaints state that he may not use the ARP for his type of claim but does not inform him that he should be sending his grievance directly to the IIGO.  *See* ECF No. 16-2 at 14-15.  With no evidence establishing that Mr. Chang was made aware of the alternative procedure, the issue of whether such a remedy was available to him remains.  *See Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (finding that regardless of its existence, a remedy was unavailable where an officer told the plaintiff he could not appeal a classification decision).  It is therefore not appropriate to grant summary judgment on

this basis.  The court will turn to the merits of Mr. Chang's claim that his termination was retaliatory.

D.      Termination and Retaliation

As a preliminary matter, inmates generally do not have a constitutional right to work while incarcerated.  *Altizer v. Paderick*, 569 F.2d 812, 815 (4ᵗʰ Cir. 1978)); *Blankumsee v. Galley*, No. CA PWG-15-837, 2016 WL 270073, at *7 (D. Md. Jan. 21, 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The courts have held that there is no liberty interest in prison job programs entitling him to protection under the Due Process Clause absent a showing of significant hardship and that removal from work assignments is discretionary and does not violate the Eight Amendment.  *Kitchen v. Upshaw*, 286 F.3d 179, 187 (4th Cir. 2002) (holding that prisoners do not enjoy a liberty interest in work release); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (holding that a valid conviction deprives an inmate of their liberty "to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution"); *Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 281 (4th Cir. 2009) (affirming that termination from a prison job does not constitute and Eighth Amendment violation).  Therefore, Mr. Chang cannot maintain either an Eighth or Fourteenth Amendment claim based on his termination.  However, if his termination was retaliatory in nature, Mr. Chang may be protected under the First Amendment.

To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that:  (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors*

11

*of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *cf. Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (outlining elements of a Title VII retaliation claim).

A plaintiff may establish retaliatory conduct if the defendant took an action against the plaintiff that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quotation marks and citation omitted). A plaintiff must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity, and that the retaliatory act was temporally proximate to that activity. *Id.*

In the prison context, courts "treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). As such, an inmate cannot simply assert a generalized retaliatory animus but must allege facts that support the claim of retaliation. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989). Moreover, a retaliation claim fails if there is a legitimate reason for the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Defendants do not contest that Mr. Chang's filed grievances are protected First Amendment activity. However, even viewing the evidence in the light most favorable to Mr. Chang, he fails to establish that his First Amendment rights were affected by his reclassification or that the filing of his grievance caused Defendants to terminate him from his IOA position. Nothing in the record suggests that his termination and reclassification deterred Mr. Chang from exercising his rights.

12

Rather, after an unsuccessful informal complaint, Mr. Chang pursued a formal complaint through the ARP process and initiated this lawsuit.  Furthermore, Defendants have presented a legitimate explanation for why Mr. Chang was removed from his job assignment.  Mr. Chang and other IOAs had been observed engaging in prohibited conduct and poorly performing their duties.  This would have been sufficient grounds to reclassify Mr. Chang.  Instead, he and the others were given a second chance on the day shift which allowed for more supervision.  Mr. Chang refused the opportunity because it interfered with activities he wanted to do during the day.  His ultimate reclassification was the result of his own refusal to perform the duties of an IOA.  No retaliatory animus has been demonstrated on the part of any Defendant.  Moreover, none of the Defendants were the final decisionmaker; final approval was given by the Assistant Warden.  Finally, Lt. Gattis had no authority to decide where Mr. Chang would be reclassified; by regulation that falls to Case Management.  Mr. Chang cannot show that Defendants retaliated against him for filing grievances and therefore Defendants are entitled to summary judgment.  The court need not address Defendants' remaining arguments.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a motion for summary judgment, will be granted.  Mr. Chang's Motion to Appoint Counsel will be denied.  A separate Order follows.


June 18, 2026                                              /s/
Date                                          DEBORAH K. CHASANOW
                                              United States District Judge


13